**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Franchise Holding II LLC, | No. CV-12-01363-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Huntington Restaurants Group Incorporated, et al., | |
| Defendants. | |

Defendants Richard and Michelle Beattie, Huntington Restaurant Group, and Golden Management have filed a motion for summary judgment. Doc. 72. Plaintiff Franchise Holding II, LLC has also moved for summary judgment. Doc. 74. The motions are fully briefed. For the reasons that follow, the Court will deny Defendants' motion and grant Plaintiff's motion.[1]

**I.    Background Facts.**

On January 27, 2003, Plaintiff obtained a judgment for $24,874,870.09 plus interest against Defendants. The Ninth Circuit affirmed the judgment on July 20, 2004. Plaintiff thereafter made efforts to collect on the judgment, including garnishing two bank accounts totaling $355,737.95 and seizing various items of personal property, including a 43-foot boat in Florida.

---

[1] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1   On January 11, 2006, Plaintiff and Defendants entered into a contract titled "Agreement for Stay of Execution Upon Judgment" ("the Stay Agreement"). The Stay Agreement established a schedule under which Defendants would make payments totaling $13,000,000 by June 1, 2013, at which time Plaintiff agreed to release the remainder of the judgment debt. As part of the Stay Agreement, Defendants agreed that they would "not further contest the Arizona Judgment in any manner and . . . withdraw and dismiss all pending motions or other challenges" to the judgment. Doc. 75-2 at 3. The Defendants also agreed to advise Plaintiff of the creation of any entities controlled by Defendants, to withhold all compensation to Richard Beattie from "BFLP, Quality Restaurants Northwest, Inc., Huntington Restaurant Group, Inc., Golden Management, Inc. or any other affiliated entity or person affiliated or related in any way to any of the Beattie parties" without Plaintiff's approval, and to allow Plaintiff reasonable access to the financial records of entities controlled by Defendants. *Id*. at 4-5. In the event Defendant defaulted, the Stay Agreement provided that the stay would immediately cease and Plaintiff would be entitled, without notice, to enforce the judgment.

Defendants made payments totaling $200,000, but missed a $1,000,000 payment on June 1, 2008. Defendants have refused to make any additional payments.

**II.   Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome

of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   Analysis.**

Arizona law governs the Stay Agreement. Doc. 75-2 at 5. The elements for a breach of contract claim under Arizona law include the existence of a contract, a material breach of the contract, and resulting damages. *Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010). Defendants do not dispute that they entered into the Stay Agreement with Plaintiff. Defendants also acknowledge that they materially breached the Stay Agreement and that their breach damaged Plaintiff in the amount of $12.8 million. Defendants maintain, however, that they are entitled to summary judgment for two reasons: (1) the Stay Agreement is unenforceable because it lacked consideration, and (2) the sole remedy available under the Stay Agreement is enforcement of the original $24,874,870.09 judgment, which has now expired under Arizona law. The Court will address each of these arguments.

**A.   Lack of Consideration.**

Defendants assert that the Stay Agreement did not impose any obligation that they did not already have, and did not give Plaintiff any right it did not already possess. Doc. 78 at 2. Defendants argue that the Stay Agreement lacks consideration. *Id*.

"[A] promise must be supported by consideration or some substitute in order to be legally enforceable." *Yarbro v. Neil B. McGinnis Equip. Co.*, 420 P.2d 163, 167 (Ariz. 1966). "[A] benefit to a promisor or a loss or detriment to the promisee is good consideration to legally support a promise." *Id*. The Court concludes that the Stay Agreement is legally enforceable because both parties tendered consideration.

Plaintiff furnished consideration by promising to forebear on enforcement of the $24,874,870.09 judgment. *See Id*. at 166-67; 3 Williston on Contracts § 7:44 (4th ed.) ("Forbearance from exercising a right or doing an act which one has a right to do is legal consideration.").

- 3 -

1       Defendants also furnished consideration.  Although the Court previously
2  suggested in dicta that Defendants' promise not to "contest the Arizona Judgment any
3  further" and to "withdraw and dismiss all pending motions or other challenges to the
4  Arizona Judgment" (Doc. 75-2 at 3) did not constitute consideration (Doc. 28 at 6), upon
5  reconsideration, the Court reaches the opposite conclusion.  Arizona courts follow the
6  Restatement (Second) of Contracts.  *See Bank of Am. V. J. & S. Auto Repairs*, 694 P.2d
7  246, 248 (Ariz. 1985) ("In the absence of contrary authority Arizona courts follow the
8  Restatement of the Law.").  As the Restatement explains, "[t]he execution of a written
9  instrument surrendering a claim or defense by one who is under no duty to execute it is
10 consideration if the execution of the written instrument is bargained for even though he is
11 not asserting the claim or defense and believes that no valid claim or defense exists."
12 Restatement (Second) of Contracts § 74(2).  Defendants also promised that Beattie would
13 receive no compensation from various entities without Plaintiff's prior written consent
14 constituted consideration.  Doc. 75-2 at 5.  Defendants argue that this promise granted
15 Plaintiff no new rights because judgment creditors such as Plaintiff already have the right
16 to garnish compensation.  Doc. 78 at 5.  But the Stay Agreement eliminated 100% of
17 Beattie's prospective compensation from the designated entities, a much more significant
18 benefit than the 25% garnishment rate for wages.  *See* A.R.S. §§ 33-1131(B), 12-
19 1598.10(F).  In addition, Defendants promised to advise Plaintiff of the creation of any
20 new entities and to grant Plaintiff access to their financial records.  These promises also
21 constituted valid consideration:  "Monetary compensation is not needed; *any* benefit to
22 the promisor or detriment to the promisee is sufficient."  *USLife Title Co. of Ariz. v.*
23 *Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1987) (emphasis added; citation omitted).

24      In sum, both parties furnished consideration.  The Court concludes that there is no
25 genuine dispute of fact that would preclude the Court from entering summary judgment
26 for Plaintiff on this issue.

27      **B.    Available Remedies.**

28      Defendants argue that even if the Stay Agreement is enforceable, the sole remedy

under the agreement is execution upon the now-expired judgment.  Paragraph five of the Stay Agreement provides in relevant part:

> In the event any of the payments . . . is not timely made, the stay of execution . . . shall immediately cease and [Plaintiff] may, without notice, seek to collect or otherwise enforce the Arizona Judgment to the full extent of the judgment . . . together with interest thereon[.]

Docs. 73-1 at 4; 75-2 at 4.  Defendants argue that the "sole remedy available to [Plaintiff] is execution upon the judgment."  Doc. 72 at 3.

Under Arizona law, "parties to a contract may specify certain remedies which may be used in case of a breach.  They may in addition make such a provision the exclusive remedy or remedies, barring all others which would otherwise be available.  To obtain this result, however, the intent of the parties must be made clear."  *Zancanaro v. Cross*, 339 P.2d 746, 750 (Ariz. 1959); *see also Hadley v. Sw. Properties, Inc.*, 570 P.2d 190, 193 (Ariz. 1977) (en banc) ("The clear intent of the parties here was that the only remedy the plaintiffs would have in the event of breach was forfeiture.  That remedy was exercised; plaintiffs can seek no further damages against either defendant."); 17 A Am. Jur. 2d, Contracts, § 709 (2004) ("Although the parties may, in their contract, specify a remedy for a breach, that specification does not exclude other legally recognized remedies.  An agreement to limit remedies must be clearly expressed in the contract.  A contract will not be construed as taking away a common-law remedy unless that intention is clear[.]").

The Court concludes that the parties did not clearly intend to designate enforcement of the judgment as the sole remedy available under the Stay Agreement.  As quoted above, the Stay Agreement provided that Plaintiff "*may*, without notice, seek to collect or otherwise enforce" the judgment.  Docs. 73-1 at 4; 75-2 at 4 (emphasis added). The Stay Agreement thus provided that Plaintiff may, at its option, seek to enforce the judgment, but the Stay Agreement did not provide that Plaintiff may not do anything else. *Zancanaro* clearly holds that contractual language providing that a party *may* pursue one remedy does not show that the parties intended to preclude all other remedies available

for breach. 339 P.2d at 750 ("The clause provides that the plumbing contractor 'may, at his option' do certain things, but it does not provide that he may not do anything else. . . . [T]here is no provision absolving the owner or builder of liability for damages[.] The ordinary common-law remedies were retained, and plaintiff was entitled to sue for profits on the entire contract."). Thus, rather than identifying an exclusive remedy, the language of the Stay Agreement adds enforcement of the judgment to the panoply of remedies available under Arizona law for breach of contract.

Defendants rely on a number of cases to bolster their argument that enforcement of the judgment is the exclusive remedy under the Stay Agreement, but each of these cases involved contract language that revealed the parties' intent to designate an exclusive remedy. In *Green v. Snodgrass*, 289 P.2d 191 (Ariz. 1955), the contract specified that "[i]n event the . . . purchaser failes [sic] to comply with his part of this contract, then the earnest money (of $5000) receipted for herein *shall* be forfeited and divided equally between the Seller and Green Realty Co., Real Estate Broker." *Id.* at 192 (emphasis added). The court explained that such mandatory language "provide[d] what the rights of the parties to the contract shall be in the event of breach." *Id.* at 193. Defendant cites *Deuel v. McCollum*, 400 P.2d 859 (Ariz. Ct. App. 1965), for the proposition that "[w]here a contract provides for the remedy or the amount of damages in the event that there is a breach, the terms of the contract will control." *Id.* at 862. But the contract in *Deuel* used the same mandatory language as was used in *Green*, stating that "the Owner *shall* pay to the Architect" the amount specified. 400 P.2d at 861. The contract in *Motorola, Inc. v. Fairchild Camera & Instrument Corp.*, 366 F.Supp. 1173 (D. Ariz. 1973), also contained mandatory language, stating that breach "*shall* have the results provided for herein[.]" *Id.* at 1179 (emphasis added). And although the lease in *Wilson v. Pate*, 498 P.2d 535 (Ariz. Ct. App. 1972), used the word "may," it provided very specific alternative remedies: "lessor may, at his election, either distrain for said rent due, or declare this lease at an end[.]" *Id.* at 536. The court found that this language provided "a very clear statement of alternative remedies available to the lessor following

- 6 -

a breach by the lessee." *Id.* No similar clear limitation is found in the Stay Agreement.

Defendants argue that the exclusive nature of the enforcement remedy is indicated by use of the word "shall" in the remedy provision of the Stay Agreement, but "shall" appears in that provision only to indicate that the stay provided by the agreement "shall immediately cease" upon default and to require that Plaintiff give Defendants notice of the default. Doc. 75-2 at 4. ¶ 5. The word does not limit the available remedies.

Defendants argue that Timothy Cesarek, the person who negotiated the Stay Agreement for Plaintiff, testified in his deposition that enforcement of the judgment is the only remedy available under the agreement. Mr. Cesarek did not give such testimony. He acknowledged that enforcement of the judgment is the only remedy mentioned in the Stay Agreement, but he specifically stated that "it's not the complete remedy." Doc. 73-2 at 4. The deposition transcript also makes clear that Mr. Cesarek was asked only about remedies mentioned in the Stay Agreement, not about remedies available under Arizona law for breach of contract. *Id.*

Finally, Defendants argue that the only remedy available is execution of the judgment because "[w]hatever injury [Plaintiff] suffered from Beattie's breach is already wholly subsumed within the judgment." Doc. 72 at 4. This argument is clearly incorrect. Arizona permits parties to enter into an accord and satisfaction. *See Best Choice Fund, LLC v. Low & Childers, P.C.*, 269 P.3d 678, 686 (Ariz. Ct. App. 2011). An accord and satisfaction is an agreement between two contracting parties to accept alternate performance to discharge a preexisting duty. *See id*. Breach of the accord does not limit the parties to enforcement of the prior duty; the accord itself is a new contract, and a party may sue for breach of that new agreement and damages flowing from the breach. Restatement (Second) of Contracts § 281(2). The Stay Agreement provided alternative performance for the duty established by the judgment, and Plaintiff can sue for breach of the Stay Agreement.

Because the Court finds that the Stay Agreement does not provide an exclusive remedy in the event of breach, the Court concludes that Plaintiff may pursue a traditional

damages remedy for breach of the agreement. No genuine dispute of fact precludes the Court from entering summary judgment for Plaintiff.

### C.     Damages.

Plaintiff asserts that "[b]ecause the amounts totaling $12.8 million that Defendants failed to pay are liquidated sums, Plaintiff is entitled to pre-judgment interest on those amounts." Doc. 74 at 8. Defendants do not dispute that Plaintiff's claim for $12.8 million is liquidated or that Plaintiff is entitled to prejudgment interest if it prevails on the merits. Doc. 78 at 7. The parties disagree, however, on the interest rate that applies.

The Stay Agreement does not specify an interest rate. The Court therefore must look to Arizona law to determine what interest rate applies. Plaintiff cites A.R.S. § 44-1201(A), which provides that "[i]nterest on any loan, indebtedness or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which any rate of interest may be agreed to." Defendants argue that Plaintiff is relying on a superseded version of Arizona's interest statute, yet Defendants cite to subpart (B) of the same statute. Doc. 78. Subpart (B) applies only where an interest rate is not "provided for in statute" or when "a different rate is [not] contracted for in writing." A.R.S. § 44-1201(B). The interest rate in this case is "provided for in statute" – in A.R.S. § 44-1201(A) – because it is interest on "indebtedness or other obligation" within the meaning of that provision. The Court will award prejudgment interest at a rate of ten per cent per annum.

**IT IS ORDERED:**

1.     Defendants' motion for summary judgment (Doc. 72) is **denied**.

2.     Plaintiff's motion for summary judgment (Doc. 74) is **granted**. Plaintiff will be awarded damages in the amount of $12,800,000, with prejudgment interest at ten percent per annum. Plaintiff will be awarded post-judgment interest in accordance with 28 U.S.C. § 1961. Plaintiff shall lodge a proposed form of judgment with the Court on or before **January 15, 2014**. Defendants may provide written comments on the proposed judgment on or before **January 22, 2014**, and Plaintiff may reply on or before

**January 29, 2014**.

3. Plaintiff may file a motion for attorneys' fees on or before **January 29, 2014**. Plaintiff shall provide all supporting materials with its motion, rather than waiting to file such materials as provided in the Court's local rules.

Dated this 8th day of January, 2014.

_____
David G. Campbell
United States District Judge